**RIVERSIDE & DAN RIVER COTTON MILLS, Inc., v. UNITED STATES.** *

No. 42090.

Court of Claims.

June 3, 1935.

*Writ of certiorari denied 56 S. Ct. 148, 80 L. Ed. ——.

See, also  (Ct. Cl.)  37 F.(2d)  965.

Ellsworth C. Alvord, of Washington, D. C. (Donald Horne, of New York City, on the brief), for plaintiff.

George H. Foster, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The plaintiff seeks to recover $391,402.-47, a duly scheduled overassessment of income and profits taxes for the year 1920, which was credited by the Commissioner of Internal Revenue against a deficiency assessment in a like sum for the year 1918, together with interest. The claim is based on the contention that the additional assessment of $391,402.47, made on November 6, 1926, for the year 1918, was barred by the statute of limitations.

The defense is: (1) That the assessment was timely made under the provisions of a valid waiver; (2) that the plaintiff filed no claim for refund with respect to its taxes for the year 1918; and (3) the claim for refund in respect to taxes for 1920, upon which the suit is based, was re-jected by the Commissioner of Internal Revenue more than two years prior to the date of filing the petition.

The return for 1918 was filed on June 14, 1919. Under section 277 (a) (2) of the Revenue Act of 1924, 26 USCA § 1057 note, the period for assessment of additional taxes for 1918 expired June 14, 1924. The additional assessment, as stated, was made on November 6, 1926. Prior to June 14, 1924, plaintiff had given no waiver for the year 1918, and had not filed a claim for abatement or credit in respect to that year. On April 17, 1926, plaintiff executed and filed an income and profits tax waiver for the year 1918 extending to December 31, 1926, "the time prescribed by law for making any assessment of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of the said taxpayer for the year (or years) 1918. * * *" The plaintiff contends that this waiver was ineffective because (1) it was not approved by the Commissioner in writing, (2) because it contained conditions which the Commissioner had no legal authority to accept, (3) because it was secured by duress, and (4) because it was specifically prohibited by section 278 (e) of the Revenue Act of 1926, 26 USCA § 1062.

■■ We are of the opinion that the waiver was valid. In respect to plaintiff's first contention that the waiver was ineffective because it was not approved by the Commissioner in writing, it is conceded that the instrument itself was not signed by the Commissioner or any one authorized to act for him. But the statute does not require that the Commissioner's consent be evidenced by signing the waiver, or that it be embodied in a single document. Eclipse Lawn Mower Co. v. United States, 1 F. Supp. 768, 76 Ct. Cl. 354. The one requirement is that it shall be in writing. Sabin v. United States, 44 F.(2d) 70, 70 Ct. Cl. 574. Any writing, formal or informal, is sufficient if made for the purpose of recording the Commissioner's approval, and if approval may be gathered therefrom as a reasonable inference. Stearns Co. v. United States, 291 U. S. 54, 54 S. Ct. 325, 328, 78 L. Ed. 647. The burden was on the plaintiff to show that the consent to the extension period executed and filed by it with the Commissioner was not approved by him in writing. In the absence of such proof the presumption of official regularity is sufficient to sustain the inference that he

did so approve it. As was said by the court in Stearns Co. v. United States, supra, "Acts done by a public officer 'which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter.' Bank of the United States v. Dandridge, 12 Wheat. 64, 70, 6 L. Ed. 552; United States v. Royer, 268 U. S. 394, 398, 45 S. Ct. 519, 69 L. Ed. 1011; Knox County v. Ninth National Bank, 147 U. S. 91, 97, 13 S. Ct. 267, 37 L. Ed. 93; Mandeville v. Reynolds, 68 N. Y. 528, 534; Demings v. Supreme Lodge Knights of Pythias, 131 N. Y. 522, 527, 30 N. E. 572; Wigmore, Evidence, vol. 5, § 2524." The plaintiff has failed to show that the Commissioner did not approve in writing. The presumption of official regularity therefore stands, and it must be held that the Commissioner did his duty and acted within the requirements of the statute in approving the waiver.

█ Plaintiff's second contention, that the waiver was ineffective because it contained conditions which the Commissioner had no legal authority to accept, is, we think, without merit. These conditions in substance were (1) that plaintiff's tax liability for the years 1918, 1919, 1920, and 1921, which was then in the process of recomputation by the Commissioner should be determined by using revised inventories for the period January 1, 1918, to December 31, 1921; and (2) that no penalty would be imposed for any of the years. The conditions complained about were attached to the waiver by the plaintiff itself, otherwise its consent to the extension of the limitation period for assessment of 1918 taxes to December 31, 1926, was unqualified. The Commissioner complied strictly with these conditions in his determination and computation of plaintiff's tax liability for the years involved, revised inventories were used, and no penalty was imposed for any of the years. The correctness of his computation is not challenged. The plaintiff in these circumstances has no cause for complaint and cannot be heard to say that the waiver was invalidated by conditions which it attached to the instrument and which the Commissioner complied with. The conditions complied with, plaintiff's consent to the extension, as stated, was unqualified.

█ The contention that the waiver was secured by duress is based on the grounds (1) That prior to the execution of the waiver and after the running of the statute the Commissioner had mailed to plaintiff a thirty-day deficiency letter indicating an additional tax of $1,380,923.63, to which was added, under section 250 (b) of the Revenue Act of 1918 (40 Stat. 1083), a penalty of $812,744.21, which additional tax and penalty were duly protested by plaintiff on the ground there were no facts to warrant the Bureau in undertaking to make assessment under section 250 (b) of the 1918 act, or to impose any penalty; and (2) that prior to the execution of the waiver, Bureau officials stated at hearings before the Bureau of Internal Revenue that there was insufficient evidence to justify the assertion of fraud but that the fraud penalty would be insisted upon unless plaintiff executed a waiver of the statute of limitations. It is contended that the threat to impose the fraud penalty in case a waiver was not given amounted to duress and made the waiver void.

"Duress" is defined to exist when one by the unlawful act of another is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will. Hackley v. Headley, 45 Mich. 569, 574, 8 N. W. 511. "The rule as to duress * * * has receded from its ancient strictness and has been accepted in numerous instances wherein it appeared that the parties were not on equal terms and no alternative existed except to submit to an illegal exaction or suffer irreparable injury to business." James Shewan & Sons, Inc., v. United States, 73 Ct. Cl. 49. To constitute legal duress there must be that degree and character of coercion by one party as will deprive another of his freedom of will to do, or not to do, a specific thing, and make him subject to the will of the other. To void the waiver in this case on the ground that it was secured by duress, plaintiff must show that in signing the waiver it was not acting with a free will, but was coerced by the will of authorized agents of the defendant. This the plaintiff has failed to show. There is no allegation or proof that any deception or fraud was practiced by agents of the Bureau of Internal Revenue on plaintiff. Both plaintiff and the defendant knew that the statute of limitations had expired on additional assessments for 1918, except in case of false and fraudulent returns made to evade the tax. Bureau officials having the matter in charge had stated that there was insufficient evidence to justify the assertion of fraud. Plaintiff knew this and knew that unless it executed the waiver it was not liable for further taxes for 1918.

With full knowledge of its legal rights plaintiff executed the waiver and consented to an extension of time in which assessment could be made. Had it stood upon its legal rights and declined to execute the waiver, no additional assessment could have been legally made. The plaintiff knew this. Giving the waiver in these circumstances was a voluntary act on its part unattended by any act of coercion or duress on the part of the defendant.

Moreover, we think the plain language on page 2 of plaintiff's brief, filed on April 17, 1926, headed "Waiver, 1918—Statute of limitations," refutes the contention that the waiver was executed under duress (finding 6): " * * * Taxpayer is, however, desirous of having its entire tax liability, if any, for the four years in question determined amicably in the Bureau without the necessity of appealing to any other tribunal and, to that end, it is willing to execute and file formal waiver as to the year 1918 upon the understanding and condition that its tax liability will be determined by using revised inventories for the period January 1, 1918, to December 31, 1921, and that no penalty will be imposed for any year in question." Plaintiff's purpose in giving the waiver was that its tax liability for the four-year period might be "amicably" determined in the Bureau without the necessity of appealing to any other "tribunal." It is also significant as to plaintiff's intent in executing the waiver that, immediately following the Commissioner's determination of its tax liability for the four-year period, it paid the net deficiency shown to be due for the four years, $78,416.88, without raising any question as to the validity of the waiver. In fact, the sufficiency of the waiver was never challenged by plaintiff, so far as the record shows, at any time prior to the filing of the petition, November 8, 1932, more than six years after the additional assessment for the year 1918 was made under it. The plaintiff during this period was represented in its income-tax matters before the Bureau of Internal Revenue by reputable and able counsel who were alert in looking after its interest. These facts are highly suggestive that the alleged coercive measures brought to bear on the plaintiff by the defendant to secure the waiver were so mild as to be unnoticeable to plaintiff at the time the waiver was given, and only became consciously discernible long years thereafter. This falls far short of the character and measure of co-ercion necessary, under all the authorities, to constitute legal duress.

Plaintiff's fourth contention is that since the assessment of additional taxes for 1918 was barred prior to the enactment, on February 26, 1926, of the Revenue Act of 1926, the waiver of April 17, 1926, having been given thereafter, was specifically prohibited by section 278 (e), 44 Stat. 59, 26 USCA § 1062, which reads: "(e) This section [title] shall not bar a distraint or proceeding in court begun before the enactment of the Revenue Act of 1924; nor shall it authorize the assessment of a tax or the collection thereof by distraint or by proceeding in court (1) if at the time of the enactment of this act [on February 26, 1926], such assessment, distraint or proceeding was barred by the statutory period of limitation properly applicable thereto, unless prior to the enactment of this act [February 26, 1926], the commissioner and the taxpayer agreed in writing thereto, or (2) contrary to the provisions of subdivision (a) of section 274 of this act [section 1048 of this title]."

This contention was decided adversely to plaintiff in McDonnell v. United States, 288 U. S. 420, 53 S. Ct. 410, 412, 77 L. Ed. 869, where the court construed a similar provision in the Revenue Act of 1924. In that case the taxpayer executed a waiver subsequent to the passage of the 1924 act in respect to additional taxes for the year 1917, the assessment and collection of which were barred when the 1924 act was passed. In holding the waiver valid, the court said:

"The fact that the waiver was executed after the running of the statute of limitations does not render it invalid. Burnet v. Chicago Railway Equipment Co., 282 U. S. 295, 298–299, 51 S. Ct. 137, 75 L. Ed. 349; Stange v. United States, 282 U. S. 270, 273–275, 51 S. Ct. 145, 75 L. Ed. 335. And confessedly, the waiver would have been good, executed when it was, if the period of limitation had expired after June 2, 1924.

"Nothing in the legislative history of section 278 indicates an intention to exclude cases like that at bar from the generality of those in which waivers may be given. The purpose of Congress in enacting paragraph (c) of section 278 indicates the contrary (26 USCA § 1060 note). Prior to the 1921 act there was no statutory provision expressly authorizing waivers; but their execution had grown out of administrative practice. Doubt as to their

validity in the absence of statute, however, had been raised; and the doubt in that situation was not removed until the decision in Aiken v. Burnet, 282 U. S. 277, 51 S. Ct. 148, 75 L. Ed. 339. The purpose of Congress in enacting paragraph (d) of section 250 of the Revenue Act of 1921 and paragraph (c) of section 278 of the Revenue Act of 1924 was not to grant authority for waivers or to limit their effect, but to remove that doubt by expressly recognizing them. The latter paragraph substantially re-enacted paragraph (d) of section 250 of the Revenue Act of 1921.

"Both the language and the purpose of paragraph (e) are consistent with this view. It was pointed out in Burnet v. Chicago Railway Equipment Co., 282 U. S. 295, 300, note 5, 51 S. Ct. 137, 75 L. Ed. 349, that paragraph (e) cannot have been intended to qualify every other subdivision in section 278. * * *

"Paragraph (e) was inserted to prevent the section from being given a 'retroactive effect.' To apply it to paragraph (c) would not serve that function. On the contrary, it would serve to cause a break in the policy of giving effect to waivers; a policy expressly adopted in the act of 1921 and avowedly continued by the act of 1924. The disclaimer of an intention to 'authorize an assessment' where 'such assessment' was already barred cannot be taken to refer to assessments which were authorized by section 278 only in the sense that they were made pursuant to an agreement by the taxpayer of the kind which the act continued to recognize and sanction."

Section 277 (a) (3) of the 1926 Act, 26 USCA § 1054 (a) (3), provides a five-year limitation period for the assessment and collection of taxes for the year 1918. Section 278, subdivisions (a), (b), (c), and (d), 26 USCA § 1058, 1059, 1060 note, 1061 and note, provides the exceptions to such limitation period. Subdivision (c) provides that where the Commissioner and the taxpayer have consented in writing to the assessment of the tax after the time prescribed in section 277 for its assessment, the tax may be assessed at any time prior to the expiration of the time agreed upon. This provision, as pointed out by the court in McDonnell v. United States, supra, is in no way modified or limited by subdivision (e). Also in Helvering v. Newport Co., 291 U. S. 485, 54 S. Ct. 480, 481, 78 L. Ed. 929, the court in discussing section 278 (c) of the Revenue Act of 1926, said:

"There is nothing in section 278 (c) or related sections which require that a waiver be given prior to the expiration of the statutory period, and this Court has uniformly held that, under the identical section 278 (c) of the 1924 act (26 USCA § 1060 note), the defense of the statute of limitations may be waived by the taxpayer after, as well as before, the expiration of the statutory period."

It is held that the waiver of April 17, 1926, was valid. By its terms the time in which the Commissioner could make assessment of plaintiff's 1918 taxes was extended to December 31, 1926. The additional assessment of $391,402.47 was made within the period so extended. The assessment was therefore legally made and the Commissioner's action in crediting against such additional tax $391,402.47 of plaintiff's determined and allowed overpayment for the year 1920 was authorized under section 284 (a) of the Revenue Act of 1926 (26 USCA § 1065 (a).

Since the plaintiff is not entitled to recover on the merits, it becomes unnecessary to consider and determine the defendant's contention that the suit is barred by the statute of limitations.

The petition is dismissed. It is so ordered.